664 F.2d 383
 7 Media L. Rep. 2380
 Dale S. CUNNINGHAM
v.
FEDERAL BUREAU OF INVESTIGATION, William H. Webster,
Director, Clarence M. Kelley, Past Director, Allen H.
McCreight, Chief, FOI/PA Branch, Department of Justice,
Griffin B. Bell, Attorney General, Barbara Allen Babcock,
Assistant Attorney General, and Richard M. Rogers, Deputy
Director Office of Privacy and Information Appeals "DSB,"
signing assistant to Allen H. McCreight, Chief, FOI/PA
Branch Federal Bureau of Investigation; Department of
Justice, Michael J. Egan, Associate Attorney General,
Quinlan J. Shea, Jr., Director, Office of Privacy and
Information Appeals, and Department of Review Committee,
Department of Justice, Federal Bureau of Investigation,
William H. Webster, Director Clarence M. Kelley, Past
Director, Allen H. McCreight, Chief, FOI/PA Branch, James M.
Powers, Past Chief, FOI/PA Branch, Department of Justice,
Griffin B. Bell, Attorney General, Barbara Allen Babcock,
Assistant Attorney General, and Richard M. Rogers, Deputy
Director Office of Privacy and Information Appeals, Appellants.
 Nos. 81-1183, 81-1537.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1981.
Decided Nov. 24, 1981.
 
 John Cary Sims (argued), Alan B. Morrison, David C. Vladeck, Washington, D. C., for appellee.
 Thomas S. Martin, Acting Asst. Atty. Gen., William W. Robertson, U. S. Atty., Leonard Schaitman, Marc Richman (argued), Appellant Staff, Dept. of Justice, Washington, D. C., for appellants.
 Before SEITZ, Chief Judge, ADAMS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Dale Cunningham, who is not a lawyer, filed and prosecuted on his own behalf a Freedom of Information Act (FOIA) lawsuit against the Federal Bureau of Investigation (FBI). Shortly after the suit was filed, the FBI released to Cunningham 860 pages of requested documents. The district court therefore found that Cunningham had "substantially prevailed" in the case despite an adverse summary judgment as to most of the remaining documents. The court awarded Cunningham, as the prevailing party, $523 in reimbursement for out-of-pocket disbursements and an additional $750 "in lieu of attorney's fees." On appeal the FBI seeks review only of the $750 award and raises a single narrow statutory question: whether a prevailing pro se litigant who is not an attorney may recover attorney's fees under the FOIA.
 
 
 2
 Although this question has not until now been squarely before this Court, it has been the subject of extensive attention from other courts and has received a variety of answers. The Court of Appeals for the District of Columbia Circuit has held that non-lawyer pro se litigants are eligible to receive attorney's fees under the FOIA. E. g., Cox v. United States Department of Justice, 601 F.2d 1, 5-6 (D.C.Cir.1979). Reaching the contrary conclusion, several other courts of appeals have decided that attorney's fees are available only when an attorney has been employed. Crooker v. United States Department of Justice, 632 F.2d 916 (1st Cir. 1980); Barrett v. Bureau of Customs, 651 F.2d 1087 (5th Cir. 1981); Burke v. United States Department of Justice, 559 F.2d 1182 (10th Cir. 1977). The Second Circuit has dealt with the issue more narrowly by holding that attorney's fees are not available to a prevailing pro se FOIA litigant who, because he was a prisoner, did not divert time from any income-producing activity of his own. Crooker v. U. S. Department of the Treasury, 634 F.2d 48 (2d Cir. 1980). And other circuits, confronting the same issue in the context of federal statutes other than FOIA, have held that attorney's fees are not available to pro se litigants under those statutes. White v. Arlen Realty & Development Corp., 614 F.2d 387 (4th Cir.) (Truth in Lending Act, 15 U.S.C. § 1640(a)(3)), cert. denied, 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); Davis v. Parratt, 608 F.2d 717 (8th Cir. 1979) (Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988); Hannon v. Security National Bank, 537 F.2d 327 (9th Cir. 1976) (Truth in Lending Act). After independent consideration, we join with the plurality of circuits holding that under the present statute a non-lawyer pro se litigant may not recover attorney's fees in a FOIA case.
 
 II.
 
 3
 In the absence of any express waiver of sovereign immunity, costs and expenses of litigation are not recoverable from the United States. See, e. g., Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 265-69, 95 S.Ct. 1612, 1626-27, 44 L.Ed.2d 141 (1975); United States v. Chemical Foundation, Inc., 272 U.S. 1, 20-21, 47 S.Ct. 1, 8, 71 L.Ed. 131 (1926). Any analysis of the right to receive attorney's fees in a FOIA action must therefore begin with the statutory permission for the recovery of those fees. The FOIA provides:
 
 
 4
 The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
 
 
 5
 5 U.S.C. § 552(a)(4)(E).
 
 
 6
 As an initial matter this statutory provision for "attorney fees" would appear by its own terms to be predicated on the presence of an attorney. Indeed, the restrictive nature of the statutory language is reflected in the award of the district court, which provided Cunningham with $750 "in lieu of attorney's fees" (emphasis added). This phrasing demonstrates an apparent recognition that the award does not come within the explicit language of the statute. Yet if the statute does not provide explicitly for such an award, some clearly implicit authorization must be found for what is in effect a waiver of sovereign immunity. And this authorization must derive directly from the language employed by Congress in providing for the award of fees, or the plain meaning of the statute will bar recovery regardless of other concerns. See, e. g., United States v. Rutherford, 442 U.S. 544, 551-55, 99 S.Ct. 2470, 2475-77, 61 L.Ed.2d 68 (1979).
 
 
 7
 Although the term "attorney fees" by itself does not admit of substantial ambiguity, the complete phrase "reasonable attorney fees and other litigation costs reasonably incurred" may be more amenable to differing interpretations. The District of Columbia Circuit has read that phrase to mean that only litigation costs need be "reasonably incurred," while attorney fees may be awarded even when a pro se litigant has not incurred any such fees. Cuneo v. Rumsfeld, 553 F.2d 1360, 1366 (D.C.Cir.1977); Holly v. Acree, 72 F.R.D. 115, 116 (D.D.C.1976), aff'd by order sub nom. Holly v. Chasen, 569 F.2d 160 (D.C.Cir.1977). On the other hand, the Fifth Circuit has read the phrase "reasonably incurred" as modifying both litigation costs and "reasonable attorney fees." Barrett v. Bureau of Customs, 651 F.2d 1087, 1089 (1981). We believe that the interpretation offered by the Fifth Circuit is more compatible with the language of the statute. The apparent redundancy that the District of Columbia Circuit seeks to explain-the repetition of the word "reasonable"-is resolved by finding the phrases "reasonable" and "reasonably incurred" to modify different elements of the attorney fee award. It is certainly plausible to conclude, as did the Fifth Circuit, that Congress, in its use of this language, intended to ensure that attorney fee awards would not be excessive and so required that the award compensate only for a reasonable amount of an attorney's services ("reasonably incurred"), billed at a reasonable rate ("reasonable attorney fees"). Viewed in this light the phrase "reasonable attorney fees ... reasonably incurred" is neither repetitious nor ambiguous; rather, it explicitly limits the recovery of reasonable attorney fees to those litigants that have reasonably incurred them.[1] In contrast, the reading proposed by the District of Columbia Circuit leads to an outcome difficult to harmonize with the statutory language. That Court interprets the statute to mean that litigation costs must be incurred in order to be collected, but that "attorney fees" constitute some cash award, unrelated to any particular attorney or any particular fee, that a litigant may be able to obtain regardless of any financial burden the litigant or his lawyer has shouldered. If attorney fees may be awarded to litigants regardless of whether those fees were actually incurred, the award becomes something of a cash bonus to a successful litigant as well as a financial penalty to the defendant government agency.[2]
 
 
 8
 It might be argued that an award to a pro se plaintiff is in effect compensation to the litigant for acting as his own attorney, and that it in that sense constitutes an "attorney fee" that has been incurred, within the meaning of the statute, even though the plaintiff is not actually billed by some third party. Although such reasoning is not wholly without merit, the sort of "fee" it suggests is not so close to the ordinary meaning of "attorney fee" that Congress can readily be inferred to have intended, by its use of the phrase "attorney fees," to permit this sort of award.
 
 
 9
 The situation of a pro se litigant differs from that of a person represented by a lawyer in several material respects. First, it is far from clear that proceeding as a pro se litigant involves the same sorts of financial burdens and obstacles as those inherent in retaining a lawyer. This is not to minimize the difficulty and effort involved in proceeding pro se. A person may devote considerable time and energy to such an enterprise, foregoing other possible endeavors to which that time could be applied. Yet it cannot be said that this burden entails the same financial liabilities as those borne by one who retains an attorney and becomes indebted for substantial sums of money. Although pro se litigants are likely to incur non-monetary costs that might serve as the basis for compensation, the same may be said for litigants who retain counsel. The latter group must still devote time and energy to their cases, yet the statute does not compensate them for any more than the actual attorney fees and litigation costs incurred. A second consideration is that pro se representation may not serve the aims of FOIA to the extent that representation by an attorney does. As several courts have noted, self-representation does not supply the objectivity and detachment that an outside attorney can provide as a check against groundless or unnecessary litigation. See Barrett v. Bureau of Customs, 651 F.2d 1087, 1089-90 (5th Cir. 1981); White v. Arlen Realty & Development Corp., 614 F.2d 387, 388-89 (4th Cir.), cert. denied, 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Finally, compensation to a pro se litigant presents valuation problems far more troublesome than those relating to an attorney's services. Although valuation of a lawyer's time may itself pose difficulties, see Copeland v. Marshall, 641 F.2d 880 (D.C.Cir.1980) (discussing whether attorney fees under Title VII should be measured on a cost-plus or market value basis), a far thornier problem is presented in evaluating legal services a non-lawyer performs for himself. In such a case, where there is neither an accepted market value nor a cost to serve as a baseline, any value selected will likely be arbitrary. Although none of these factors alone would necessarily compel the conclusion that attorney fees under the FOIA should not be paid to pro se parties, taken together they suggest hesitation in extending the meaning of the phrase "attorney fees" beyond its natural domain.
 
 
 10
 An additional difficulty with a rule permitting fee awards to pro se parties is exemplified by the situation in Crooker v. Department of Justice, 634 F.2d 48 (2d Cir. 1980). In that case, the Second Circuit decided that Crooker, a federal prisoner who had represented himself pro se in a FOIA action, was ineligible for an attorney fee award because he had made no showing that prosecuting his lawsuit caused him to divert any of his time from "income-producing activity." Id. at 49. It is unlikely that Congress would have intended the FOIA to create a "cottage industry," id., yet such might be the result of permitting awards to persons who, like Crooker, could earn more by prosecuting FOIA suits than by pursuing any other activities available to them.
 
 
 11
 The Second Circuit resolved this difficulty by suggesting that attorney fees might be available to some pro se litigants, but only those who could demonstrate that they had foregone some other income-producing activity in prosecuting their FOIA lawsuits. See id. But this proposed line-between those who forfeit income and those who do not-however initially appealing as a way to meet the concern, ultimately creates its own anomalous result. If Congress actually intended that pro se litigants were to receive attorney fees, a central concern would logically be a desire that those who could not afford attorneys would not be disadvantaged in their FOIA claims.[3] Yet if "attorney fees" were made available, and perhaps measured, according to the monetary value of the time diverted to prosecuting the case, then compensation would become available in inverse proportion to the litigant's likely financial need. So construed, the statute would do little to aid those who would be likely to have the most difficulty in obtaining counsel-those without income or financial resources. We do not believe that Congress, in its use of the words "attorney fees," intended this outcome any more than it intended to permit all pro se litigants to recover attorney fee awards.
 
 
 12
 It may be that such awards, if available, might nevertheless serve some of the policies that Congress had in mind when it authorized attorney fee awards for FOIA litigants. Payment of such awards to pro se parties would offer affirmative incentives, in the form of financial gain, to the vindication of individual rights under the Act, and might provide additional deterrence to violation by government agencies of their statutory obligations.[4] But the legislative history to the 1974 FOIA amendments, which authorized attorney fee awards, suggests that Congress did not mean to create positive incentives to litigation. Rather, Congress' expressed concern was to remove obstacles to legitimate claims: "Too often the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law." S.Rep.No. 93-854, 93rd Cong., 2d Sess. 17 (1974), reprinted at Freedom of Information Act and Amendments of 1974 (P.L. 93-502), Source Book: Legislative History, Texts, and Other Documents, Joint Committee Print, 94th Cong., 1st Sess. 169 (1975). The statutory language employed by Congress to remedy the problem was designed quite plainly to remove those specific financial barriers. Congress certainly gave no evidence of seeking to do more than to lift those barriers, as it might have by, for example, authorizing punitive damages or some other noncompensatory award.
 
 
 13
 This congressional choice not to authorize awards other than those to compensate for costs actually incurred must be seen as reflecting a balance among several competing concerns likely to be of importance to Congress: enforcement of individual rights under the Act, encouragement of compliance by government agencies and officials, avoidance of frivolous lawsuits, and the protection of the public fisc against unwarranted expenses. Although providing attorney fees to pro se litigants may serve some of these interests by increasing enforcement of legitimate rights, it may disserve others by encouraging lawsuits aimed more at recovering fees than at uncovering the requested documents. The best accommodation of these competing interests is a proper subject for political debate. But where, as here, Congress has set out its proposed balance of these concerns with reasonable clarity, judicial deviation from the resolution articulated by Congress cannot be justified simply because a different outcome would further one of the several policies that Congress had taken into account.
 
 III.
 
 14
 Guided by the language employed by Congress to allow attorney fee awards to FOIA litigants, and concerning the policies underlying that congressional decision, we conclude that non-lawyer pro se litigants may not be awarded attorney fees under the Freedom of Information Act for the services they provide to themselves. The order of the district court will therefore be reversed to the extent that it provides for an attorney fee award to the appellee.
 
 
 
 [1]
 We do not mean by this interpretation of the statute to foreclose an attorney fee award for a litigant represented by an attorney who, for whatever reason, does not charge the litigant for the services rendered. This Court has held that attorney fees may be awarded under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), even when the litigant has been represented by a non-profit legal services organization that provided its services free of charge. Rodriquez v. Taylor, 569 F.2d 1231, 1244-46 (3d Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). In that case we stated:
 As a general matter, awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards.... Of course, since the object of fee awards is not to provide a wind-fall to individual plaintiffs, fee awards must accrue to counsel.
 Id. at 1245, citing Hairston v. R & R Apartments, 510 F.2d 1090, 1093 (7th Cir. 1975). Certainly such a case, where the words "attorney fee" could describe the compensation awarded by the court to an attorney who had provided valuable service to the litigant without charge, is readily distinguishable from the present case, where there is neither an attorney nor a fee to be brought within the term "attorney fee."
 Similarly, we do not decide here whether a litigant represented by salaried in-house counsel may recover an award for attorney fees, see Consumers Union v. Board of Governors of the Federal Reserve System, 410 F.Supp. 63 (D.D.C.1975, 1976), or whether an attorney representing himself may recover the value of his services to himself, see Cuneo v. Rumsfeld, 553 F.2d 1360, 1366 (D.C.Cir.1977).
 
 
 [2]
 This problem does not arise to the same extent when, as in Rodriquez v. Taylor, 569 F.2d 1231 (3d Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), an attorney fee accrues to a legal service organization rather than to the litigant. See note 1 supra
 It is true, of course, that even if a cash award were available to the pro se litigant, its availability would be subject to the discretion of the trial court. See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115 (3d Cir. 1976) (in banc). Furthermore, the legislative history of the 1974 amendments to the FOIA, Pub.L.No. 93-502, 88 Stat. 1561, indicates that Congress intentionally withheld any statutory guidance to the courts regarding the circumstances when an award of costs and attorney fees would be in the public interest, and thereby extended fairly broad discretion to the courts. See H.R.Rep.No. 1380, 93rd Cong., 2d Sess. 9-10 (1974). Even so, the statutory language provides for such awards only for "reasonable attorney fees and other litigation costs reasonably incurred," and there is no evidence suggesting that Congress intended to provide the courts with the discretion to disregard this threshold requirement for eligibility.
 
 
 [3]
 It should be noted that no class of persons is necessarily limited to pro se status. The statutory provision for attorney fees provides an incentive for private attorneys to take FOIA cases on a contingent basis, so long as the case appears to be meritorious. In addition, legal services organizations may be available to service indigent claimants
 
 
 [4]
 Even in the absence of attorney fees, however, nothing in the statute precludes a pro se litigant from recovering litigation costs actually incurred. Indeed, Cunningham has been awarded $523 in such costs. Even in the case of pro se litigants, therefore, the government faces the prospect of a financial penalty if its resistance to a FOIA request is deemed unwarranted. It does not appear likely that the deterrent effect on a government agency of a $500 award would be significantly less than that of a $1200 award