**Robert BOYADJIAN, Plaintiff,**

v.

**CIGNA COMPANIES, AFIA Worldwide Insurance, and CIGNA's AFIA Retirement Plan Administrator, Defendants.**

Civil Action No. 95–4453 (MLP).

United States District Court,
D. New Jersey.

July 30, 1997.

---

Robert Boyadjian, Somerset, NJ, pro se.

Janetta D. Marbrey, Law Offices of K. Ruth Larson, New Brunswick, NJ, for defendants.

## OPINION

PARELL, District Judge.

This matter is before the Court on cross-motions for summary judgment[1] by defendants CIGNA Companies ("CIGNA"), AFIA Worldwide Insurance ("AFIA"),[2] and CIGNA's AFIA Retirement Plan Administrator (the "Administrator"); and by plaintiff *pro se* Robert Boyadjian ("Boyadjian"). For the reasons stated in Opinion, defendants' motion for summary judgment is granted in part and denied in part, and plaintiff's motion for sum-

---

**1.** Defendants' Notice of Motion, proposed order, and the cover page of their brief all indicate that defendants have filed a motion for summary judgment, and the motion has been docketed as such by the Clerk's Office. In the body of their moving brief, however, defendants purport to seek judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See* Defs.' Br. in Supp. of Mot. for Summ. J. at 1, 3, 8, 10.) Because the majority of defendants' papers iden-

tify the motion as a summary judgment motion and because defendants rely on a number of documents outside the pleadings, the Court treats the motion as a motion for summary judgment.

**2.** AFIA was acquired by CIGNA on January 30, 1984. (Defs.' Br. in Supp. of Mot. for Summ. J. at 3.)

mary judgment is granted in part and denied in part.

### BACKGROUND [3]

Plaintiff commenced this action on August 21, 1995, seeking relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Boyadjian alleges that he was employed by AFIA from June, 1971 through March, 1982 and is therefore eligible for benefits under the company's retirement plan (the "Plan"). (Compl. at 2.) Prior to filing suit, Boyadjian repeatedly contacted CIGNA in an effort to obtain information on his eligibility for retirement benefits. (*See* Mem. & Order dated July 17, 1996, at 2–6; Defs.' Ex. 1: Letter from Boyadjian to CIGNA (July 29, 1993); Defs.' Ex. 5: Letter from Boyadjian to Hildy Pepper, CIGNA Benefits Analyst (Oct. 26, 1993).) Although it sent Boyadjian a booklet summarizing Plan after his second request, CIGNA repeatedly asserted that it had insufficient information to support Boyadjian's claim for benefits. (*See* Mem. & Order dated July 17, 1996, at 2; Defs.' Ex. 6: Letter from Marian Walter, CIGNA Senior Retirement Plans Specialist, to Boyadjian (Aug. 31, 1994) ("[T]here is no information to indicate that you have a benefit due you. Since we have no records indicating that you are eligible for a CIGNA pension, we must assume that you did not meet the requirements necessary to obtain a vested pension benefit.").)

By Memorandum and Order dated July 17, 1996, the Court denied without prejudice defendants' prior motion for summary judgment. (Mem. & Order dated July 17, 1996, at 12.) The determined that two genuine issues of material fact precluded the entry of summary judgment in favor of defendants: (1) whether Boyadjian was employed by AFIA; and (2) whether Boyadjian was employed by AFIA for the ten years required to become eligible for retirement benefits. (*Id.* at 8.) The Court also found that plaintiff's attempts to obtain retirement benefits satisfied ERISA's requirement that a plaintiff exhaust the remedies available under the benefit plan before filing suit. (*Id.* at 11.)

After the Court denied defendants' initial motion for summary judgment, defendants determined that plaintiff was in fact a former AFIA employee and entitled to retirement benefits. By letter dated October 23, 1996, CIGNA provided Boyadjian with the details concerning his pension benefits, and informed him that he could elect to receive benefits beginning on February 1, 1998 at *age* 65, or retroactively to February 1, 1995 at age 62. (Defs.' Ex. 10: Letter from Cheryl Santos–Flynn, CIGNA Senior Retirement Plans Specialist, to Boyadjian (Oct. 23, 1996).)

### DISCUSSION

A court shall enter summary judgment when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of Law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). The opposing party cannot rest on mere allegations; rather, it must present actual evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quotation omitted); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654 657 (3d Cir.1990). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### I. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

In support of their motion for summary judgment, defendants argue that they have: (1) determined that plaintiff is eligible for benefits under the Plan; (2) calculated plaintiff's benefits under the Plan; (3) instructed plaintiff on the elections he must make con-

---

**3.** For a detailed recitation of the events which preceded the filing of the Complaint, see the Court's Memorandum and Order dated July 17, 1996.

cerning his benefits; and (4) provided plaintiff with a copy of the Plan. (Defs.' Br. in Supp. of Mot. for Summ. J. at 4.) Thus, defendants assert, all of Boyadjian's claims have been rendered moot, and this Court must dismiss the action for lack of jurisdiction. (*Id.* at 4, 9.)

The federal judicial power extends only to "cases" or "controversies." U.S. Const. art. III, § 2. The "case or controversy" requirement demands that "a cause of action before a federal court present a 'justiciable' controversy, and 'no justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments.'" *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir.1992) (quoting *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968)). Article III requires that a plaintiff's claim "be live not just when he first brings the suit but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction." *Id.* (citations omitted).

Here, plaintiff has obtained the primary relief sought in the Complaint: namely, pension benefits under the Plan. As Boyadjian concedes, no justiciable controversy remains as to this claim. (*See* Pl.'s Letter Br. dated June 9, 1997 ("Reinstatement of benefits under the AFIA Plan has been rendered moot since October, 1.96.").) Accordingly, because the controversy over Boyadjian's entitlement to retirement benefits has ceased to exist, the Court shall grant defendants' motion for summary judgment with respect to this claim.

## II. *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

In support of his motion for summary judgment, plaintiff argues that he is entitled to: (1) attorneys' fees and the costs of suit; (2) $100 per day from July 29, 1993 to September 3, 1996, pursuant to 29 U.S.C. § 1132(c), for defendants' failure to provide requested information; and (3) damages for emotional distress and punitive damages. (Pl.'s Br. in Supp. of Mot. for Summ. J. at 2.) Boyadjian maintains that these claims have not been rendered moot by defendants' de-

termination that he entitled to pension benefits. (Pl.'s Letter Br. dated June 1997.) Defendants respond that "the relief requested by plaintiff is not warranted." (Defs.' Letter Br. dated May 12, 1997.) The Court will address each of plaintiff's three claims in turn.

### A. *Attorneys' Fees and Costs*

Plaintiff seeks to recover attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). (*See* Pl.'s Letter Br. dated May 24, 1997.) Boyadjian claims that he has spent 450 hours litigating this action. (*Id.*) Defendants "object to plaintiff's request for attorneys' fees and costs of suit as plaintiff instituted this action pro se," but do not cite any authority for the proposition that a prevailing *pro se* litigant cannot recover attorneys' fees in an ERISA action. (*See* Defs.' Letter Br. dated May 12, 1997, at 1.)

29 U.S.C. § 1132(g) provides that in "any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Court's research has not revealed any case law on a *pro se* litigant's entitlement to attorneys' fees in an ERISA action.

The Court of Appeals for the Third Circuit has held, however, that *pro se* litigants may not recover attorneys' fees under 42 U.S.C. § 1988. *Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir.1982). The court found that Congress

did not intend to award non-lawyer, *pro se* litigants equivalent of attorney's fees. Instead, Congress was concerned with reimbursing prevailing parties for the actual expenses of representation by an attorney because it recognized that attorney's fee awards are often essential to enable private citizens to protect their civil rights in the courts.

*Id.* at 312. The Third Circuit has also held that *pro se* litigants may not be awarded attorneys' fees under the Freedom of Information Act ("FOIA"). *Cunningham v. F.B.I.*, 664 F.2d 383 (3d Cir.1981); *see also Carter v. Veterans Admin.*, 780 F.2d 1479,

1481 (9th Cir.1986) ("We hold that a pro se litigant may not recover attorney's fees under the FOIA.... We have held that a pro se litigant is not entitled to attorney's fees under analogous provisions of the Truth in Lending Act, 15 U.S.C. § 1640(a), on the ground that no financial expenditure had been made for an attorney's services."); *Bollitier v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers*, 735 F.Supp. 623, 627 (D.N.J.1989) (concluding that a *pro se* plaintiff can never recover attorneys' fees under the Labor–Management Reporting and Disclosure Act).

ERISA provides that either party may recover a reasonable "attorney's fee." 29 U.S.C. § 1132(g)(1). The statute thus contemplates that fees may be awarded when a litigant retained attorney and incurs legal fees. *See Merrell v. Block*, 809 F.2d 639, 642 (9th Cir.1987) (" 'Fees' are specifically defined in that statute as 'reasonable attorney fees.' This choice of terminology, standing alone, leads to the conclusion that Congress intended that an attorney have been retained for a prevailing *pro se* litigant to recover attorneys fees under [Equal Access to Justice Act]."). As the Court of Appeals the Seventh Circuit reasoned in the context of the FOIA:

> The term "attorney fees" contemplates that the services of an attorney be utilized. The simple language of the statute controls. Attorney means attorney. We have no doubt that Blue Cross/Blue Shield would balk at a request for doctor fees from a person who removed his own appendix, or more realistically, a request for dental fees from someone who extracted his own tooth. No one would be entitled to reimbursement for therapist fees for attempts at self—improvement or for finding solutions to one's own problems. Rebuilding and repairing one's own car after an accident might be spiritually rewarding, however, we doubt very much if one's insurance company would honor a demand for mechanic fees. Myriad examples leap to mind that need not be repeated here. Suffice it to say that, although a pro se litigant often times performs exactly the same functions as a lawyer might in representing a client, without a degree and admission to the bar a pro litigant is not entitled to collect attorney fees. We do not mean to imply that pro se litigants do not further the purposes of FOIA, we merely conclude that, had Congress intended for pro se litigants to be entitled to some type of attorney fee award, they would have made that clear in the statute.

*DeBold v. Stimson*, 735 F.2d 1037, 1042–43 (7th Cir.1984). Accordingly, because plaintiff is a *pro se* litigant, the Court finds that he may not recover attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1).

■ Although plaintiff may not recover attorneys' fees, he may recover litigation costs reasonably incurred. *See Cunningham*, 664 F.2d at 387 n. 4; *Carter*, 780 F.2d at 1482; *DeBold*, 735 at 1043 (citing *Crooker v. United States Dep't of Justice*, 632 F.2d 916, 921 (1st Cir.1980)) (" [A] pro se litigant who substantially prevailed certainly is entitled to 'litigation costs reasonably incurred.' A pro se litigant is made whole thereby, serving as a small incentive to pursue litigation if no attorney may be found to represent the litigant."). Accordingly, the Court shall direct plaintiff to submit a Bill of Costs accordance with Local Civil Rule 54.1 within 30 days of the entry of the Order accompanying this Opinion.

### B. *Statutory Penalty*

ERISA imposes stringent disclosure obligations on administrators of employee benefit plans. *See* 29 U.S.C. §§ 1024 and 1025. Section 1024 mandates that the administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Any administrator

> who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of

the administrator) by mailing the material requested to last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)

■ Whether a district court awards a plaintiff monetary damages under 29 U.S.C. § 1132(c)(1) is a matter of discretion *Hennessy v. Federal Deposit Ins. Corp.*, 58 F.3d 908, 924 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996). In deciding whether to assess a penalty under § 1132(c)(1), courts have considered factors as "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." *Pagovich v. Moskowitz*, 865 F.Supp. 130, 137 (S.D.N.Y.1994) (citations omitted).

Here, plaintiff first contacted CIGNA on July 29, 1993, indicating that he was seeking information about "AFIA Pension/Retirement Plans 1975–1981." (Defs.' Ex. 1: Letter Boyadjian to CIGNA (July 29, 1993).) Boyadjian sought to "obtain benefit plans pertaining to AFIA, effective during the years 1976 to 1981 for Head Office Employees as well as expatriates assigned to Europe." (*Id.*) By letter dated August 13, 1993, CIGNA responded to plaintiff's inquiry by copying the vesting schedule from the Summary Plan Description. (Defs.' Ex. 2: Letter from Hildy R. Pepper, CIGNA Benefits Analyst, to Boyadjian (Aug. 13, 1993).) It appears that plaintiff then asked Ms. Pepper for a copy of the AFIA Retirement Plan; she responded by sending a booklet summarizing the Plan. (*See* Defs.' Ex. 3: Summary of Retirement Plan.) [4]

According to its terms, the booklet describes

only the highlights of your Retirement Plan. The official Plan Text and Trust Agreement are always the governing documents. The Plan Text and Trust Agreement, as well as the annual report of Plan operations and Plan description as filed with the U.S. Department of Labor, are available for review by Plan participants or their beneficiaries during normal working hours in the Personnel Department. Requests to review these documents should be directed to your supervisor. Upon written request to the Personnel Officer, AFIA, 1700 Valley Road, Wayne, New Jersey 07470, you or your beneficiary can receive a copy of these documents within 30 days. The law provides that AFIA can charge up to 25¢ a page for the reproduction of these documents.

(*Id.* at 16.)

By letter dated June 22, 1994, plaintiff referenced the language from the booklet quoted above and inquired: "Are there any other exclusions in the official Plan Text not indicated in the booklet, if so can you please send a copy of these exclusions." (Pl.'s Ex. N1: Letter from Boyadjian to Barbara Gaskin, CIGNA's AFIA Retirement Plan Administrator (June 22, 1994).) Plaintiff wrote to CIGNA again on September 8, 1994, and asked for the following information: "copies of sections from the official Plan Text and Trust Agreement regarding eligibility to the plan and any exclusions. If you can not furnish this information, can you please advise the name and address of the person to contact. This information was previously requested and not received." (Pl.'s Ex. N2: Letter from Boyadjian to Marian Walter, CIGNA Senior Retirement Plan Specialist (Sept. 8, 1994).) Plaintiff repeated his request for this information on January 23, 1995, and again on May 2, 1995. (Pl.'s Ex. N3: Letter Boyadjian to Theresa Kane, Assistant Director of Retiree Relations (Jan. 23, 1995); Pl.'s Ex. N4: Letter from Boyadjian to Kane (May 2, 1995).)

As detailed above, Boyadjian made numerous requests for the Plan's governing docu-

---

4. This second exchange of letters does not appear in the record. There appears to be no dispute, however, that plaintiff was sent a copy of the booklet summarizing the Plan. (*See* Defs.' Ex. 3; Attach. to Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J.)

ments. Plaintiff first requested the official Plan Text and Trust Agreement on June 22, 1994. *See* Pl.'s Ex. N1: Letter from Boyadjian to Gaskin (June 22, 1994.) Defendants did not provide this information until September 3, 1996, during the discovery phase of this litigation. Defendants do not contend that they furnished the documents on some earlier date; indeed, defendants have never attempted to offer plaintiff or this Court any reasonable explanation for their failure to timely respond to plaintiff's request for information.[5] The Court therefore cannot determine whether defendants' conduct is a the result of bad faith or negligence. *See Pagovich*, 865 F.Supp. at 138; *Garred v. General Am. Life Ins. Co.*, 774 F.Supp. 1190, 1201 (W.D.Ark.1991) ("Defendants admit they did no: furnish a copy of the summary plan description upon request. No explanation is offered in the answer or in the brief to the court for this omission. We cannot determine whether the failure to respond was through neglect or misfeasance.").

■ Moreover, although the Court need not find that plaintiff was prejudiced by defendants' failure to comply with ERISA's disclosure requirements,[6] it seems clear that plaintiff has been harmed by defendants' conduct. Boyadjian was compelled to initiate this lawsuit and invest many hours of his time in order to receive information to which he was entitled. *See Pagovich*, 865 F.Supp. at 138. The Court has no reason to disbelieve plaintiff's assertions that he has been distressed and frustrated by defendants' failure to provide the Plan's governing documents. Accordingly, the Court finds that the number of requests made by plaintiff, the length of the delay, defendants' failure to provide any explanation for the delay, defen-

dants' failure to locate the records establishing plaintiff's benefits eligibility until after plaintiff, appearing *pro se*, successfully defeated against a summary judgment motion, and the harm to plaintiff all weigh in favor of the imposition of a penalty against the Administrator.

■ Having concluded that the statutory penalty is warranted, the Court must determine the size of the penalty. ERISA provides that the district court, in its discretion, may award "up to $100 a day" from the date of the administrator's failure to provide requested information. 29 U.S.C. § 1132(c)(1). This amount is a ceiling, not a floor, on the penalty a court may impose.

There is little precedent to guide the Court in the exercise of its discretion as to the amount of the penalty under 29 U.S.C. § 1132(c)(1). *Pagovich*, 865 F.Supp. at 138. Courts have imposed a wide range of penalties under the statute. *See Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir.1994) (finding that district court did not abuse its discretion in imposing a penalty of $30 per day where there was little prejudice to plaintiff); *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.) (upholding statutory penalty of $25 per day for 278 days), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Hamilton v. Mecca, Inc.*, 930 F.Supp. 1540, 1557 (S.D.Ga. 1996) ("Although [the administrator] could be required to pay as much as $11,100.00 in penalties under § 502(c) (up to $100 per day × 111 days), the Court concludes that an award of $5,000 is 'sufficient to accomplish the salutary purposes of the statute in this particular case.'"); *Krawczyk v. Harnischfeger Corp.*, 869 F.Supp. 613, 632 (E.D.Wis.) (assessing penalty of $100 per day for twen-

---

**5.** Defendants have not addressed Boyadjian's request for statutory penalty, other than to assert that the "relief requested by plaintiff is not warranted." (Defs.' Letter Br. dated May 12, 1997, at 1.)

**6.** *See Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir.1994) (citations omitted) ("The circuits are in general accord neither prejudice nor injury are prerequisites to recovery under the penalty provisions of the statute. Instead, these are factors the district court may consider in deciding whether to exercise its discretion to award a penalty."); *Pagovich*, 865 F.Supp. at 137 (cita-

tions omitted) ("Every circuit which has squarely considered the issue has determined that prejudice or injury to a participant is *not* a prerequisite to the award of statutory penalties for the administrator's failure to disclose requested documents."). *But see First Atlantic Leasing Corp. v. Tracey*, 738 F.Supp. 863, 876 (D.N.J.1990) (quoting *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 233 (S.D.N.Y.1989)) ("[P]laintiff must demonstrate that 'he has suffered some degree of harm resulting in the delay' in his receipt of information to have a valid claim under ERISA.").

ty-two day delay in responding to former employee's request for a copy of benefit plan), aff'd, 41 F.3d 276 (7th Cir.1994); *Pagovich,* 865 F.Supp. at 138 (finding that administrator's "breaches of duty are deplorably raw," and imposing penalty of $75 per day); *Phillips v. Riverside, Inc.,* 796 F.Supp. 403, 411–12 (E.D.Ark.1992) (imposing statutory penalty of $5 per day and awarding attorneys' fees despite absence of bad faith on part of administrator); *Garred,* 774 F.Supp. at 1201 (assessing penalty of $50 per day for failure to supply requested information); *Thomas v. Jeep–Eagle Corp.,* 746 F.Supp. 863, 864–65 (E.D.Wis.1990) (assessing fine of $50 per day where "the record is devoid of facts justifying the failure to respond to the plaintiff's inquiry").

■ The Court finds that $75 per day is an appropriate penalty in the case at hand. Plaintiff first requested a copy of official Plan Text and Trust Agreement on June 22, 1994. Because plan administrators have 30 days to comply with requests for information, 29 U.S.C. § 1132(c)(1), penalty calculations begin 31 days after a request is made. *See Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1069 (6th Cir.1994) (citations omitted) ("[M]ost of the district courts that have considered the question have held that § 1132(c)(1) penalty calculations begin only 31 days after the plaintiffs made their document requests."). Calculation of the penalty in this case, therefore, shall run from July 23, 1994, through and including September 2, 1996, the day before defendants furnished the requested documents. The impermissible delay consists of 773 days and penalties are therefore awarded against the Administrator in the amount of $57,975.00.

## C. Emotional Distress/Punitive Damages

Plaintiff seeks "[p]unitive damages and emotional distress at one half each representing the plaintiff's contribution to AFIA for eleven years of service at the current average rate of 70,000 dollars per annum totaling 770,000 dollars." (Compl. at 3.) Defendants argue that ERISA "does not provide for recovery of emotional distress damages." (Defs.' Reply Br. at 1.)

■ ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" 29 U.S.C. § 1144(a). The phrase "relate to" has been construed broadly. *Pane v. RCA Corp.,* 868 F.2d 631, 635 (3d Cir.1989). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."[7] *Id.* (quotation omitted).

■ Here, it is clear that plaintiff's emotional distress claim has a connection with or reference to an employee benefit plan. (*See* Compl. at 2 ("The plaintiff has suffer[ed] two years of emotional distress caused by a struggle for a right which should be awarded automatically as provided in the plan....").) Because Boyadjian's emotional distress claim relates to the Plan, it is preempted under ERISA, 29 U.S.C. § 1144(a). *See Pane,* 868 F.2d at 635 (citations omitted) ("State law claims of emotional distress arising out of the administration of an ERISA employee benefit plan are also preempted."); *see also Rholdon v. Bio–Medical Applications,* 868 F.Supp. 179, 182 (E.D.La.1994) (dismissing as preempted intentional infliction of emotional distress claims based on employer's refusal to provide notice under COBRA, refusal to process claim forms, and cancellation of plaintiff's insurance).

7. The United States Supreme Court addressed ERISA preemption in *Pilot Life Insurance Co. v. Dedeaux:*

[T]he detailed provisions of § 502(a) [29 U.S.C. § 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."

481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985)).

Boyadjian also seeks punitive damages. It has been consistently held, however, that 29 U.S.C. § 1132(a) does not authorize such relief. *Pane,* 868 F.2d at 635 n. 2 (citations omitted); *see also Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 286 (2d Cir.1992) (holding that punitive damages are not available under § 1132(a)).

Accordingly, the Court shall grant defendants' motion for summary judgment with respect to plaintiff's emotional distress and punitive damages claims.

An Order accompanies this Opinion.

## ORDER

For the reasons stated in the accompanying Opinion,

IT IS, therefore, on this 30th day of July, 1997, **ORDERED** that the motion for summary judgment by defendants CIGNA Companies, AFIA Worldwide Insurance, and CIGNA's AFIA Retirement Plan Administrator be and hereby is **GRANTED** with respect to plaintiff's claims for: (1) retirement benefits; (2) attorneys' fees; (3) emotional distress; and (4) punitive damages; and

IT IS FURTHER ORDERED that defendants' motion for summary judgment be and hereby is **DENIED** with respect to plaintiff's claims for (1) costs; and (2) a statutory penalty; and

IT IS FURTHER ORDERED that the motion for summary judgment by plaintiff Robert Boyadjian be and hereby is **GRANTED** with respect to plaintiff's claims for: (1) costs; and (2) a statutory penalty in the amount of $57,975.00; and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment be and hereby is **DENIED** with respect to plaintiff's claims for: (1) retirement benefits; (2) attorneys' fees; (3) emotional distress; and (4) punitive damages; and

IT IS FURTHER ORDERED that plaintiff serve and file a Bill of Costs in accordance with Local Civil Rule 54.1 within 30 days of the entry of this Order.